[Cite as *Griffith v. Aultman Hosp.*, 2014-Ohio-1218.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| GENE'A GRIFFITH, EXECUTRIX FOR THE ESTATE OF HOWARD E. GRIFFITH, DECEASED | : : : : | JUDGES: Hon. John W. Wise, P.J. Hon. Patricia A. Delaney, J. Hon. Craig R. Baldwin, J. |
| Plaintiff - Appellant | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | |
| | : | |
| AULTMAN HOSPITAL | : | Case No. 2013CA00142 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Stark County Court of Common Pleas, Case No. 2013CV00487

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        March 25, 2014

APPEARANCES:

For Plaintiff-Appellant

LEE E. PLAKAS
MEGAN J. FRANTZ OLDHAM
COLLIN S. WISE
Tzangas, Plakas, Mannos, Ltd.
220 Market Avenue South, Eighth Floor
Canton, OH 44702

For Defendant-Appellee

RICHARD S. MILLIGAN
Milligan Pusateri Co., LPA
4684 Douglas Circle NW
P.O. Box 35459
Canton, OH 44735

*Baldwin, J.*

{¶1} Plaintiff-appellant Gene'a Griffith, Executrix for the Estate of Howard E. Griffith, Deceased, appeals from the June 28, 2013 Judgment Entry of the Stark County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Aultman Hospital.

## STATEMENT OF THE FACTS AND CASE

{¶2} Howard E. Griffith was a patient at appellee Aultman Hospital from May 2, 2012 until his death on May 8, 2012. Griffith had surgery on May 2, 2012 and, after developing a heart arrthymia, was placed on a cardiac monitor on May 4, 2012. On May 6, 2012, he was found unresponsive with the leads to his cardiac monitor detached from his chest. He was taken off of life support on May 8, 2012 and died on such date. Appellant is his daughter and the Executrix of his estate.

{¶3} After her attempts to obtain a complete copy of her father's medical records were unsuccessful, appellant, who had received some medical records from appellee, filed an action on February 12, 2013 against appellee pursuant to R.C. 3701.74 to compel production of her father's complete medical record from his admission on May 2, 2012 until his death on May 8, 2012. Appellant, in her complaint, alleged, in part, that appellee had failed to produce any monitoring strips for her father's vital signs from the early morning of May 6, 2012, among other times, and any nurses' records from the morning of May 6, 2012, among other times. Appellee, on March 8, 2013, filed an answer to appellant's complaint. Appellee, in its answer, alleged that it had provided appellant with her father's complete medical record on February 28, 2013.

{¶4} Appellant, on March 11, 2013, deposed Jennifer Reagan-Nichols, appellee's Director of Medical Records. Reagan-Nichols testified that a medical record consisted of a patient's chart minus any type of document that did not belong as part of the patient's permanent medical record. She further testified that appellee decided what was part of a patient's medical record and that appellee's definition of what was a medical record was the same definition as set forth in R.C. 3701.74. Reagan-Nichols further testified that Bates Numbers 655 to 707, which appellee produced in response to Request for Production No. 1, were not part of the medical record because "those documents are [EKG] rhythm strips that do not print out of other systems that we don't get…." Reagan-Nichols Dep. Vol. I at 42. She testified that the nursing staff did not print out the same and send them to the medical records department and that the medical records department did not have access to the rhythm strips. She was unable to say where the rhythm strips were maintained and testified that she did not know if they met the definition of a medical record.

{¶5} Appellee, on March 14, 2013, filed a Motion for Summary Judgment supported by the sworn interrogatory answers of Reagan-Nichols. Reagan-Nichols, in her answers, indicated that a complete copy of Howard Griffith's medical chart had been provided to appellant. On March 28, 2013, appellant filed a memorandum in opposition to appellee's Motion for Summary Judgment and a Motion to Conduct Additional Discovery pursuant to Civ.R. 56(F).

{¶6} After Reagan-Nichols submitted an errata sheet that changed her testimony, the trial court permitted appellant to take a second deposition of Reagan-Nichols. During the May 24, 2013 deposition, Reagan-Nichols testified that the reason

Bates Numbers 655 to 707 were not considered part of Howard Griffith's medical record was because they were never provided to the medical records department. Reagan-Nichols testified that they had been printed at the direction of appellee's Risk Management Department and stored by such department. She further testified that if a record or document is not given to the medical records department, it is not made part of the patient's medical record even if another part of the hospital may have a copy. Reagan-Nichols, when asked, testified that she meant to change her testimony to state that Bates Numbers 655 to 707 did not meet the legal definition of a medical record. When asked if she agreed that they were medical records of a patient, she stated that she did.  According to Reagan-Nichols, "if they provide it to us [the medical records department], then we make it part of the medical record. Reagan-Nichols Dep. Vol. II at 103. She agreed that the only distinction as to what was part of a patient's medical record was what the medical providers gave to the medical records department and that it was within the provider's discretion as to what to provide to the medical records department.

{¶7}    During her deposition, Reagan-Nichols testified that she did not know if the Risk Management Department had any other records for Howard Griffiths that had not been provided to appellant.

{¶8}    After Reagan-Nichol's second deposition, both parties filed supplemental briefs. Appellant, in her June 7, 2013 supplemental brief, asked, in the alternative, to be permitted to conduct additional discovery pursuant to Civ.R. 56(F) "to determine where and why another page from Mr. Griffith's medical record suddenly appeared, what other departments including risk management have other medical records regarding Mr.

Griffith that have not been produced, and to obtain the additional monitoring equipment information regarding Mr. Griffith that has not been produced." Attached to the brief was a letter from defense counsel dated May 31, 2013 supplementing the prior discovery responses with Bates Number 708.

{¶9} On June 28, 2013, an oral hearing was held on appellee's Motion for Summary Judgment. Pursuant to a Judgment Entry filed on the same day, the trial court granted appellee's motion, finding that appellee had produced Griffith's medical record as defined by R.C. 3701.74(A)(8).

{¶10} Appellant now raises the following assignments of error on appeal:

{¶11} "I. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER AULTMAN HAS PRODUCED MR. GRIFFITH'S ENTIRE MEDICAL RECORD FROM HIS MAY 2, 2012 ADMISSION BECAUSE 1) AULTMAN'S DEFINITION OF "MEDICAL RECORD" IS INCONSISTANT WITH STATE AND FEDERAL LAW AND, AS SUCH, ANY CERTIFICATIONS OR ASSERTIONS BY AULTMAN THAT IT HAS PRODUCED MR. GRIFFITH'S ENTIRE MEDICAL RECORD ARE MEANINGLESS, 2) JENNIFER REAGAN-NICHOLS WHO CERTIFIED SUCH RECORDS TESTIFIED THAT SHE DOES NOT KNOW IF OTHER AULTMAN DEPARTMENTS HAVE MEDICAL RECORDS REGARDING MR. GRIFFITH, AND 3) BASED ON JENNIFER REAGAN-NICHOL'S TESTIMONY, ADDITIONAL RECORDS OF MR. GRIFFITH SHOULD  EXIST THAT HAVE NOT BEEN PRODUCED."

{¶12} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED GENE'A GRIFFITH ADDITIONAL TIME TO CONDUCT DISCOVERY BEFORE RULING ON AULTMAN'S MOTION FOR SUMMARY JUDGMENT FOR REASONS

INCLUDING THAT FACT THAT AULTMAN HOSPITAL'S MOTION FOR SUMMARY JUDGMENT WAS FILED ONLY A MONTH AFTER THE COMPLAINT WAS FILED AND THERE A (SIC) SUFFICIENT BASIS TO BELIEVE THAT AULTMAN IS IN POSSESSION OF ADDITIONAL MEDICAL RECORDS NOT PRODUCED."

## Standard of Review

{¶13} We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

{¶14} Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶15} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 1996-Ohio-107, 662 N.E.2d 264. The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth

"specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶16} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997-Ohio-259, 674 N.E.2d 1164, citing *Dresher, supra.*

I

{¶17} Appellant, in her first assignment of error, argues that the trial court erred in granting appellee's Motion for Summary Judgment because there is a genuine issue of material fact as to whether appellee had produced Griffith's entire medical record from his May 2, 2012 admission.

{¶18} As is stated above, appellant filed her complaint seeking the medical records pursuant to R.C. 3701.74. R.C. 3701.74 states, in relevant part, as follows:

{¶19} "(B) A patient, a patient's personal representative or an authorized person who wishes to examine or obtain a copy of part or all of a medical record shall submit to the health care provider a written request signed by the patient, personal representative, or authorized person dated not more than one year before the date on which it is submitted. The request shall indicate whether the copy is to be sent to the requestor, physician or chiropractor, or held for the requestor at the office of the health care provider. Within a reasonable time after receiving a request that meets the requirements of this division and includes sufficient information to identify the record requested, a health care provider that has the patient's medical records shall permit the patient to examine the record during regular business hours without charge or, on request, shall provide a copy of the record in accordance with section 3701.741 of the Revised Code,

except that if a physician or chiropractor who has treated the patient determines for clearly stated treatment reasons that disclosure of the requested record is likely to have an adverse effect on the patient, the health care provider shall provide the record to a physician or chiropractor designated by the patient. The health care provider shall take reasonable steps to establish the identity of the person making the request to examine or obtain a copy of the patient's record.

{¶20}  "(C) If a health care provider fails to furnish a medical record as required by division (B) of this section, the patient, personal representative, or authorized person who requested the record may bring a civil action to enforce the patient's right of access to the record."

{¶21}  R.C. 3701.74(A)(8) defines a "medical record" as meaning " data in any form that pertains to a patient's medical history, diagnosis, prognosis, or medical condition and that is generated and maintained by a health care provider in the process of the patient's health care treatment."

{¶22}  At the June 28, 2013 hearing before the trial court on appellee's Motion for Summary Judgment, appellee argued that that the critical word in the above statute was "maintained"  and that "the only meaning  that can attached to it, is that the hospital record is to be that which the hospital maintains, not that which a Plaintiff in a legal malpractice case - - or in a medical malpractice case thinks should be maintained, not everything having to do with the patient, but  that which a hospital determines needs to be maintained by a health care provider in the process of a patient's health care." Transcript at 6-7. We agree.  As is stated above, Jennifer Reagan-Nichols, the Director of Medical Records who maintained the medical records, testified that the medical

record consisted of what the medical provider gave to her. Thus, the medical record consists of what was maintained by the medical records department and information that the provider decides not to maintain is not part of the medical record. Appellee certified that it had produced the medical records at issue in this case. On such basis, we find that the trial court did not err in granting summary judgment in favor of appellee.

{¶23} It is apparent that the purpose of R.C. 3701.74 is to enable a patient to obtain his or her file in order, for example, to obtain a second opinion or transfer to another medical provider. There is nothing in the statute indicating that the statute was intended to be used as a broad discovery device. We note that R.C. 3701.74 is contained in Title 37 of the Revised Code, which is titled "Health-Safety-Morals." More specifically, R.C. 3701.74 is a miscellaneous provision contained in Chapter 3701, which is titled "Department of Health." The civil rules do not contain a similar provision.

{¶24} Appellant's first assignment of error is, therefore, overruled.

II

{¶25} Appellant, in her second assignment of error, argues that the trial court abused its discretion when it denied her additional time to conduct discovery pursuant to Civ.R. 56(F) before ruling on appellee's Motion for Summary Judgment.

{¶26} Civ.R. 56(F) provides:

{¶27} "(F) When affidavits unavailable.

{¶28} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the

application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

{¶29}   The decision of whether to grant or deny a Civ.R. 56(F) continuance is within the sound discretion of the trial court. *Beegle v. Amin,* 156 Ohio App.3d 533, 2004–Ohio–1579, 806 N.E.2d 1045 (7th Dist. Jefferson). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶30}   In the case sub judice, appellant, in her motion for additional discovery, argued, in part, that she should be permitted to conduct additional discovery regarding Bates Number 708. A letter from defense counsel dated May 31, 2013 had supplemented the prior discovery responses with Bates 708 (EKG rhythm strips). However, Reagan-Nichols testified that such strips did not meet the legal definition of medical records.  While appellant also alleged that she was entitled to additional discovery to determine whether any department other than the medical records department, including Risk Management,  had  medical records regarding her father that were not produced, as is stated above, such documents do not meet the definition of a medical record because they were not "maintained' by the medical records department.   We find that the information that appellant sought through additional discovery either did not fall within the definition of a medical record and/or was already provided by appellee. We further find, therefore, that the trial court did not abuse its discretion in not allowing appellee additional time for discovery before ruling on appellant's Motion for summary Judgment.

{¶31}   Appellant's second assignment of error is, therefore, overruled.

{¶32}   Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

and Wise, P.J. concur.

and Delaney, J. dissents.

*Delaney, J., dissenting.*

{¶33} I respectfully dissent from the majority opinion.

{¶34} Any claim for malpractice is governed by Civ.R. 10(D) which requires the filing of an affidavit of merit with the complaint for any medical claim, dental claim, optometric claim or chiropractic claim. In order to meet this evidentiary requirement, it is imperative that sufficient medical records available for review are provided to a patient for an expert to opine whether the standard of care has been violated.

{¶35} R.C. 3701.74 permits a patient to file a civil action against a health care provider to enforce the patient's right of access to a copy of part or all of the patient's medical record that is "generated and maintained by a health care provider in the process of the patient's health care treatment." R.C. 3701.74(A)(8).

{¶36} The majority improperly limits a patient's ability to access all of the patient's medical records to those records given to a medical record department, even though the health care provider's other departments, such as Risk Management in this case, also has or may have medical records of the patient. I find such a limitation is not found in the plain language of the statute, nor is R.C. 3701.74 limited in any way to the patient's need for his or her medical records (e.g., to obtain a second opinion or file a malpractice action).

{¶37} Health care providers have a responsibility to maintain up-to-date, accurate and complete patient records. This is for the benefit of both the patient and the health care provider. I am concerned the majority's opinion could lead to the concealment, even though unintended, of medical records if a health care provider can

self-define the statutory definition of "maintain" to only include those records it determines to send to its medical records department.

{¶38} Based upon the record before us, I would sustain the first and second assignments of error and remand this matter to the trial court for further proceedings.