O’Donnell, J.,
dissenting.
{¶ 31} Respectfully, I dissent.
{¶ 32} Records generated and maintained by a hospital’s risk management department for risk-management purposes following the death of a patient are not records “used in the process of a patient’s health care treatment,” and therefore, they are not “medical records” as defined by R.C. 3701.74(A)(8). Accordingly, because Aultman Hospital produced the entire medical record of Howard Griffith and is entitled to judgment as a matter of law in connection with the request for the production of documents, I would affirm the judgment of the Fifth District Court of Appeals.
Facts and Procedural History
{¶ 33} On May 2, 2012, Aultman Hospital admitted Howard Griffith for surgery to remove a portion of his left lung. Following that surgery, he developed intermittent atrial fibrillation, and the hospital placed him on continuous cardiac *204 monitoring. On May 6, around 4:00 a.m., a nurse assessed him, but approximately 45 minutes later, an x-ray technician found him unresponsive with the leads to his cardiac monitor detached from his chest and without a heartbeat. Medical personnel resuscitated him and placed him on life support, but his family decided to remove him from life support, and he died on May 8. The discharge summary dated May 12, 2012, stated that “a retrospective review of his monitor at the nurse’s station showed that the EKG leads did not show any kind of rhythm,” starting around 4:00 in the morning, until the x-ray tech found him.
{¶ 34} Gene'a Griffith, executor of the estate of Howard E. Griffith, subsequently attempted to obtain a complete copy of her father’s medical record. Aultman Hospital provided her with the medical record maintained by its medical records department, but after reviewing the documents provided by the hospital, Griffith believed she had not received the complete medical record. As a result, she filed this action to compel the production of the complete medical record in accordance with R.C. 3701.74 and 2317.48.
{¶ 35} The complaint alleged that the hospital failed to produce any monitoring strips from the cardiac monitor or any nursing records from her father’s stay in the hospital. The hospital denied that it had withheld the complete medical record, but it nonetheless produced monitor strip printouts “as responsive documents from the visit that are not part of the medical record.” The printed strips from the cardiac monitor reflected the activity from 4:00 a.m. to 4:51 a.m. on May 6, 2012.
{¶ 36} Griffith then deposed Jennifer Reagan-Nichols, Aultman Hospital’s medical records director, who explained that the medical records department does not maintain all medical data generated during a patient’s stay at the hospital — printing out all of the data from the equipment monitoring patients 24 hours a day would result in “loads of paper in your chart.” She noted that a doctor or a nurse had discretion to make printouts from the monitoring strips part of the medical record by sending them to the medical records department, but she also testified that “the nursing staff does not provide them to us” and that the electronic data on the monitoring machines is not accessible to or maintained by the medical records department as part of a patient’s medical record.
{¶ 37} According to Reagan-Nichols, the monitoring data is retained only for 24 hours after a patient’s discharge; after that time, the machine automatically deletes the data unless a doctor ordered it to be saved. Thus, she explained, if medical data is not documented by a doctor or a nurse, it is not maintained as part of the patient’s medical record by the hospital.
{¶ 38} When asked whether Howard Griffith’s electronic monitoring data had been retained on the monitoring equipment after his death, Reagan-Nichols *205 testified, “I don’t know.” However, she explained that the monitoring strips provided in discovery “were printed from electronic monitoring equipment after the discharge of the patient at the direction of hospital Risk Management” and stored there and that “[t]he data in this equipment is not part of the medical record.” She clarified that Cathy Rainieri, the director of the risk management department, had ordered the charge nurse on the cardiac floor to print out the electronic monitoring data after Howard Griffith’s death and subsequent discharge from the hospital. Reagan-Nichols could not say whether the charge nurse printed out all the data from the equipment or just a part of it.
{¶ 39} The trial court granted summary judgment to Aultman Hospital, finding that it had produced the complete medical record. The Fifth District affirmed that judgment, concluding that “the medical record consists of what was maintained by the medical records department and information that the provider decides not to maintain is not part of the medical record.” 2014-Ohio-1218, 2014 WL 1342988, ¶ 22. The appellate court also noted that R.C. 3701.74 is a miscellaneous provision to enable a patient to obtain his or her file, not a broad discovery device.
Law and Analysis
{¶ 40} On appeal to this court, Griffith presents one proposition of law: “A hospital should not be permitted to withhold portions of a patient’s medical record by unilaterally selecting and storing those medical records in a department other than its medical records department.” This proposition of law implies that a health care provider could conceal a medical record by storing it in a location other than the provider’s medical records department. This focus on concealment and location is misleading.
{¶ 41} R.C. 3701.74(A)(8) defines “medical record” to mean “data in any form that pertains to a patient’s medical history, diagnosis, prognosis, or medical condition and that is generated and maintained by a health care provider in the process of the patient’s health care treatment.” A careful reading of this statute reveals that a health care provider is required to produce only those records it has generated and maintained in the process of the patient’s health care treatment.
{¶ 42} Thus, a demonstration that medical data exists or has been generated and maintained by a hospital does not automatically require that it be produced as a medical record. Rather, the General Assembly has directed health care providers to give access to medical records as defined in the statute — data that pertains to medical history, diagnosis, prognosis, or medical condition and that is generated and maintained by a health care provider in the process of the patient’s health care treatment. The legislature could have mandated that health care providers maintain and produce all patient data generated for any purpose, *206 but it did not do so. Rather, it particularly specified that medical records are those generated and maintained by a medical provider in the process of the patient’s health care treatment. Thus, to resolve this appeal, we only need to apply R.C. 3701.74 as written.
{¶ 43} Although Aultman Hospital electronically monitored Howard Griffith on a cardiac monitor during the course of his stay, no provider maintained that data in the process of Griffith’s treatment. Here, the facts show that Aultman Hospital’s risk management department generated and maintained the cardiac monitoring strips at issue here following his discharge from the hospital. At that point, the hospital was no longer providing any medical care to him, and therefore, the risk management department could not have generated and maintained that data “in the process of the patient’s health care treatment.” The department’s purpose for maintaining this data is not immediately apparent from this record, but it is manifest that it was not in furtherance of providing health care treatment. It is also apparent that a health care provider did not generate or maintain this data in the process of the patient’s treatment.
{¶ 44} For these reasons, these documents are not medical records that R.C. 3701.74 required Aultman Hospital to produce.
Conclusion
{¶ 45} The evidence shows that Aultman Hospital produced the complete medical record from its medical records office in conformity with Gene’a Griffith’s request. The disputed cardiac monitor strips are not medical records as defined by R.C. 3701.74(A)(8) because they were not generated and maintained by a health care provider in the process of Howard Griffith’s health care treatment. Rather, the risk management department of Aultman Hospital generated them for its own purposes after Howard Griffith’s death. Accordingly, although Aultman Hospital produced this data in discovery, it had no obligation to do so.
{¶ 46} For these reasons, I would affirm the judgment of the Fifth District Court of Appeals.